UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

QUINCY MOUTRY,                    )
                                  )
            Petitioner,           )
                                  )
v.                                )        No.:   3:19-CV-226-TAV-HBG
                                  )
TONY MAYS,                        )
                                  )
            Respondent.           )

## MEMORANDUM OPINION

Petitioner Quincy Moutry is an inmate proceeding pro se in this federal habeas

action under 28 U.S.C. § 2254.  Petitioner challenges the legality of his confinement under

Tennessee judgments of conviction for carjacking, aggravated robbery, and possession of

a firearm with the intent to go armed during the commission of a dangerous felony.  Having

considered the submissions of the parties, the State-court record, and the law applicable to

Petitioner's claims, the Court will **DENY** the petition.

## I.      Background

On March 4, 2008, Petitioner called the victim, and they arranged to meet in a

Burger King parking lot.  *State v. Moutry*, No. E2011-02531-CCA-R3-CD, 2013 WL

3105616, at *2 (Tenn. Crim. App. June 17, 2013) ("*Moutry I*").  When the victim arrived,

Petitioner got out of a Dodge Durango and got inside the victim's car.  *Id.*  After

communicating with someone via text message, Petitioner left the victim's vehicle and

another man came from the Durango and got into the victim's car.  *Id.*  The man pointed a

gun at the victim, and the victim started to get out of the car.  *Id.*  Another individual came

from the direction of the Durango and started pistol-whipping the victim to force her back into her car. *Id*. Someone came out of the Burger King, and the men jumped into the victim's car and drove out of the parking lot. *Id*. The victim called Petitioner and 911. *Id*. After speaking with 911, she again called Petitioner and was on the phone with him when the police arrived. *Id*. The police soon found the victim's car, which had been abandoned nearby. *Id.*

Knoxville Police Department ("KPD") officers later initiated a traffic stop of the Durango seen at the Burger King, and a suspect fled from the vehicle, evading arrest. *Id*. at *3. However, Petitioner's phone was found inside the Durango, and phone records showed that the phone had been used to call the victim prior to the incident at Burger King. *Id*.

At approximately 1:00 a.m. on March 5, 2008, Petitioner called the police and reported his Durango missing. *Id*. When KPD Officer Darrell Sexton went to Petitioner's home to speak with him, Petitioner refused him entry to the residence and told the officer that a friend had borrowed the vehicle and failed to return it. *Id*. Officer Sexton stated that Petitioner's clothing was consistent with that of the person who had evaded arrest earlier that night. *Id*.

The victim was shown a photographic array and identified Petitioner as one of the perpetrators. *Id*. at *2. She was never able to identify the other two individuals. *Id*. Petitioner was subsequently interviewed, and while he admitted knowing the victim, he denied any involvement in the events. *Id*. at *3.

A Knox County grand jury charged Petitioner with carjacking, aggravated robbery, and possession of a firearm with the intent to go armed during the commission of a dangerous felony [Doc. 15-1 p. 7]. The presentment alleged that the offenses occurred "on or about the 13th day of March, 2008" [*Id.*].

After the jury had been sworn at Petitioner's trial, the State moved to amend the presentment to change the date on which Petitioner committed the offense [Doc. 15-2 p. 6–8]. The prosecutor explained that the State had previously made a motion to amend the presentment to change the date of the offense to March 4, 2008, but that the trial court had not yet ruled on the motion [*Id.* at 6]. Petitioner objected to the amendment [*Id.* at 6–7]. Over Petitioner's objection, the trial court granted the motion to amend the presentment to read that the offense was committed on "a day in March" [*Id.* at 7-8].

Petitioner's trial began on April 12, 2011 [*see* Doc. 15-2 p. 5]. The trial concluded the same day, and the jury convicted Petitioner as charged [*Id.* at 101; *see also* Doc. 15-1 p. 46–48]. The trial court imposed an effective sentence of twenty-seven (27) years' imprisonment [*Id.*]. The Tennessee Court of Criminal Appeals ("TCCA") affirmed the trial court's judgment on appeal. *Moutry I*, 2013 WL 3105616, at *1 (Tenn. Crim. App. June 17, 2013), *perm. app. denied*, No. E2011-02531-SC-R11-CD (Tenn. Nov. 13, 2013). The Tennessee Supreme Court declined discretionary review [Doc. 15-9].

Thereafter, Petitioner timely filed a pro se petition for post-conviction relief [Doc. 15-10 p. 5–43] that was later amended [*Id.* at 57–60] by Petitioner's subsequently appointed counsel [*Id.* at 45–46]. After Petitioner's initial post-conviction counsel was relieved [*Id.* at 61–63], the court appointed Petitioner a second attorney [*Id.* at 62–64], who

was also later permitted to withdraw [*Id*. at 72, 74]. The court appointed a third attorney [*Id*. at 75, 77], who filed a second amended petition for post-conviction relief [*Id*. at 79–85]. The court later granted the third attorney's motion to withdraw [*Id*. at 91]. A fourth attorney was appointed [*Id*. at 92–93] and permitted to withdraw [*Id*. at 94], and the court then appointed Petitioner a fifth attorney [*Id*. at 95–96]. Petitioner's fifth appointed attorney was relieved as counsel [*Id.* at 99] after Petitioner retained a sixth attorney who represented him at the evidentiary hearing [*Id*. at 97, 99; Doc. 15-11]. The TCCA provided the following summary of proof presented at the evidentiary hearing:

> At the evidentiary hearing, trial counsel testified that after he was appointed to represent the Petitioner, he met with the Petitioner on several occasions. The Petitioner was released on bond pending trial, and trial counsel stated that he met with the Petitioner at the courthouse during court appearances and on two or three occasions at trial counsel's office. Trial counsel said he reviewed with the Petitioner the discovery provided by the State and the offense date listed in the presentment.
>
> Trial counsel also utilized the services of an investigator. He did not recall whether the investigator interviewed the victim and said the victim was the only witness who he believed the investigator should have interviewed.
>
> The Petitioner told trial counsel that he did not know the victim, had never had any contact with her, and was not present when the offenses occurred. Trial counsel recalled that the defense centered on the fact that the original presentment listed the offense date as a date during which the Petitioner was incarcerated. Over trial counsel's objection, the trial court allowed the State to amend the presentment on the day of trial. Trial counsel stated that he advised the Petitioner against relying primarily upon an alibi defense based on the Petitioner's incarceration on the date of the offense alleged in the presentment. Trial counsel explained that the defense was coupled with and strengthened by a defense that the Petitioner was not involved and did not know the victim.
>
> Trial counsel noted that telephone records established calls between the Petitioner and the victim and that evidence was presented at trial that they

had some sort of relationship prior to the offenses. Trial counsel said he first learned of the prior relationship between the Petitioner and the victim at trial. He said the Petitioner always maintained prior to trial that he did not know the victim and had never had any contact with her.

Trial counsel said he discussed with the Petitioner whether the Petitioner should testify at trial. Trial counsel stated that he and the Petitioner reviewed the Petitioner's criminal history and the discovery. Trial counsel believed that if the Petitioner testified, information regarding the Petitioner's criminal history and background would have been presented to the jury. As a result, trial counsel advised the Petitioner against testifying at trial.

Trial counsel did not present any evidence on behalf of the defense at trial. He acknowledged that he did not cross-examine several witnesses at trial and explained that he did not question witnesses on cross-examination if the witnesses did not have any anything "to add that would benefit my client's defense." In preparing for his cross-examination of the victim, trial counsel met with the Petitioner, reviewed the victim's statements and criminal history, and created an outline. Trial counsel did not interview the victim prior to trial. He stated that while he likely spoke to one of the officers, he did not recall when he did so. Trial counsel explained that he did not attempt to locate anyone who could have committed the offenses because he did not believe that the Petitioner would have any knowledge as to who committed the offenses since the Petitioner maintained that he was not involved and did not know the victim.

Trial counsel testified that while the prosecutor often submits a plea offer, he did not recall the prosecutor submitting any plea offers in the Petitioner's case. Trial counsel noted that the Petitioner had an extensive criminal history and spent a vast majority of his adult life in confinement. He denied the Petitioner's claims that he had failed to inform the Petitioner of any plea offers.

Trial counsel did not believe that he submitted a sentencing memorandum to the trial court in which he addressed mitigating factors. He did not present any proof during the sentencing hearing.

On cross-examination, trial counsel acknowledged that he was appointed to represent the Petitioner in January 2010 and that he requested discovery from the State in February 2010. He stated that upon receiving discovery from the State, he typically reviews it and provides a copy of the discovery to his client

and that he believed he adhered to his customary practices in the Petitioner's case.

Trial counsel recalled that the Petitioner provided him with printouts of the dates in which the Petitioner was in custody. Trial counsel showed those printouts to the prosecutor in an effort to dismiss the charges. He recalled that the defense was dependent upon his ability to attack the victim's identification of the Petitioner as a perpetrator.

The Petitioner testified that trial counsel only met with him once prior to trial and only had one telephone conversation with him. The Petitioner stated that the meeting occurred in 2010 approximately one month prior to trial at trial counsel's office and only lasted ten to fifteen minutes. He said that during the meeting, trial counsel told him that he should not worry about the charges because the State did not have any evidence against him. The Petitioner also stated that the investigator did not meet with him until approximately three days prior to trial and that the investigator informed him of his inability of locate the victim.

The Petitioner maintained that trial counsel failed to prepare for trial. He explained that trial counsel should have conducted an investigation, attempted to contact witnesses, and identified those witnesses to the Petitioner. The Petitioner stated that trial counsel did not review the discovery or discuss possible defenses with him. He also stated that the only discovery material that he received was the 9–1–1 call log and that he did not learn of the recovery of a cellular phone until he read the trial transcript. The Petitioner maintained that trial counsel did not discuss the issue of the offense date listed in the presentment with him. He stated that while he instructed trial counsel to obtain his jail records to show that he was incarcerated when the offenses occurred, trial counsel failed to do so. The Petitioner also stated that trial counsel never presented him with a plea offer.

The Petitioner stated that he told trial counsel that he wanted to testify at trial but that trial counsel failed to call him to testify. The Petitioner said that trial counsel did not ask him on the day of trial whether he wanted to testify and never told him that he had a right to testify. The Petitioner also said that trial counsel only cross-examined three of the State's witnesses.

The Petitioner maintained that trial counsel did not meet with him prior to the sentencing hearing, did not ask him whether he wanted any family members to testify on his behalf at the sentencing hearing, and did not advise him of his possible sentence. He complained that trial counsel did not file

any documents on his behalf for purposes of sentencing and did not present any evidence during the sentencing hearing.

On cross-examination, the Petitioner testified that when he was arrested, he told the police officers that he had no knowledge of the offenses. He stated that his defense was that he was not guilty because he was not involved in the commission of the offenses. He denied reporting the Durango as stolen but acknowledged that an officer identified him as the person who reported the vehicle as stolen. He said he wanted trial counsel to argue at trial that the Petitioner was not guilty, did not know the victim, and was in jail when the offenses occurred. While the Petitioner maintained that the jail records established that he was incarcerated on March 10, 2008, the records did not show that he was incarcerated on March 4.

The Petitioner was released on bond when trial counsel was appointed to represent him. The Petitioner stated that while in court following his appointment in January 2010, trial counsel gave him a business card and informed him that the State did not have any evidence against him. The Petitioner stated that as a result of trial counsel's assertions, the Petitioner did not go to trial counsel's office for a meeting until the summer of 2010. The Petitioner said the meeting lasted twenty to forty minutes. He stated that he did not go to trial counsel's office for another meeting prior to trial because he trusted trial counsel's statements that the State did not have any evidence establishing guilt. The Petitioner also stated that he and trial counsel also met during court appearances but that they only discussed the lack of the State's proof.

The Petitioner testified that he did not provide trial counsel with the names of any witnesses to interview because no such witnesses existed. He also testified that he trusted trial counsel to build a defense around the Petitioner's assertions that he did not know the victim and did not commit the offenses. The Petitioner said that he also told the investigator that he did not know the victim and did not commit the offenses. The Petitioner maintained that he first learned at trial that the victim identified him in a photographic array.

The Petitioner stated that had he testified at trial, he would have maintained that he was in jail when the offenses occurred. He maintained that he did not hear the trial judge inform him of his right to testify during a hearing at trial because the judge was speaking in a low voice.

*Moutry v. State*, No. E2017-00353-CCA-R3-PC, 2018 WL 2465147, at *2–4 (Tenn. Crim. App. June 1, 2018) ("*Moutry II*"). Following the hearing, the post-conviction court denied relief [Doc. 15-10 p. 101–05].

The TCCA affirmed the denial of post-conviction relief. *Moutry II*, 2018 WL 2465147, at *7, *perm. app. denied*, No. E2017-00353-SC-R11-PC (Tenn. Sept. 14, 2018). The Tennessee Supreme Court declined discretionary review [Doc. 15-20].

On June 3, 2019, Petitioner submitted the instant petition, raising the following claims for relief, as paraphrased by the Court:

Claim 1:     The trial court erred in allowing the State to amend the date of the offenses alleged in the presentment after the jury was already sworn.

Claim 2:     Trial counsel rendered ineffective assistance in failing to conduct a proper investigation and prepare for trial.

Claim 3:     Trial counsel rendered ineffective assistance in failing to convey a plea offer to Petitioner.

Claim 4:     Trial counsel rendered ineffective assistance in failing to prepare a defense and to request a continuance after the trial court allowed the State to amend the presentment.

Claim 5:     Trial counsel rendered ineffective assistance in failing to advise the Petitioner of his right to testify on his own behalf.

Claim 6:     Trial counsel rendered ineffective assistance in failing to file a sentencing memorandum or present evidence during Petitioner's sentencing hearing.

[Doc. 1]. This Court ordered Respondent to respond to the petition [Doc. 8], and Respondent complied by filing an answer on September 16, 2019 [Doc. 16]. Thereafter, Petitioner filed a reply to the response on October 24, 2019 [Doc. 22].

8

## II.    Legal Standard

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which prevents the grant of federal habeas relief on any claim adjudicated on the merits in a State court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision based on an unreasonable determination of facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1)–(2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Federal habeas relief may be granted under the "contrary to" prong where the State court (1) arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). Under the "unreasonable application" prong, a federal court may grant relief where the State court applies the correct legal principle to the facts in an unreasonable manner. *See id*. at 407–08; *Brown v. Payton*, 544 U.S. 133, 141 (2005). Whether a decision is "unreasonable" is an objective inquiry; it does not turn on whether the decision is merely incorrect. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *Williams*, 529 U.S. at 410–11. This standard will allow relief on a federal claim decided on its merits in State court only where the petitioner demonstrates that the State ruling "was so lacking in justification that there was an error understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). When evaluating the evidence presented in State court, a federal habeas court presumes the correctness of the State court's factual findings unless the petitioner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The doctrine of procedural default also limits federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (holding prisoner's procedural default forfeits his federal habeas claim). A procedural default exists in two circumstances: (1) where the petitioner fails to exhaust all of his available State remedies, and the State court to which he would be required to litigate the matter would now find the claims procedurally barred, and (2) where a State court clearly and expressly bases its dismissal of a claim on a State procedural rule, and that rule provides an independent and adequate basis for the dismissal. *See Coleman v. Thompson*, 501 U.S. 722, 731–32, 735 n.1 (1991). A procedural default may be circumvented, allowing federal habeas review of the claim, only where the prisoner can show cause and actual prejudice for the default, or that a failure to address the merits of the claim would result in a fundamental miscarriage of justice. *Id.* at 749–50; *see also Wainwright v. Sykes*, 433 U.S. 72, 87, 90–91 (1977).

"Cause" is established where a petitioner can show some objective external factor impeded defense counsel's ability to comply with the State's procedural rules, or that his trial counsel rendered ineffective assistance. *See Coleman*, 501 U.S. at 753. The prejudice demonstrated to overcome the default must be actual, not merely a possibility of prejudice. *See Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir. 1986) (citations omitted); *see also United States v. Frady*, 456 U.S. 152, 170 (1982) (holding a prejudice showing requires a

petitioner to bear "the burden of showing, not merely that errors [in the proceeding] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with error of constitutional dimensions").  A fundamental miscarriage of justice of occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## III.    Analysis

### A.    Amendment of the Presentment

In his first claim of error, Petitioner argues that the trial court deprived him of his Fifth Amendment right to be indicted by a grand jury when it allowed the State to amend the date of the offenses in the presentment after the jury had already been sworn [Doc. 1 p. 5; Doc. 2 p. 7–16].  However, "the law is well-settled that a state criminal accused has no *federal* constitutional right to be indicted by a grand jury."  *Lindsey v. Parker*, No. 2:10-cv-193, 2013 WL 3834005, at *12 (E.D. Tenn. July 12, 2013) (citing *Beck v. Washington*, 369 U.S. 541, 545 (1962)); *see also Williams v. Haviland*, 467 F.3d 527, 531–32 (6th Cir. 2006) (stating that the Supreme Court has repeatedly asserted "that the Grand Jury Clause of the Fifth Amendment does not apply to the states").  Additionally, habeas claims regarding state indictments are otherwise not generally cognizable federal law claims. *Knewel v. Egan*, 268 U.S. 442, 446 (1925) ("It has been uniformly held by this court that the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings."); *Burrows v. Engle*, 545 F.2d 552, 553 (6th Cir. 1976).  Therefore, this claim is not cognizable on federal habeas review.

However, even if this claim were cognizable, the Court notes that the TCCA deemed Petitioner's Fifth Amendment claim waived based on Petitioner's failure to present the issue in the trial court. *Moutry I*, 2013 WL 3105616, at *8 (finding Petitioner's claim citing his "Fifth Amendment 'grand jury guarantee'" waived for failure to present the issue to the trial court). As the Court has already noted, failure to comply with a State procedural rule will foreclose habeas review of a claim if the decision of the State court rested on the State-law rule, and it is independent of the federal question and adequate to support the judgment. *See, e.g.*, *Walker v. Martin*, 562 U.S. 307, 315 (2011). To determine whether a habeas claim is precluded by the failure to observe a State procedural rule, a reviewing court must determine: (1) whether an applicable rule exists with which the petitioner failed to comply; (2) whether the State courts actually enforced the rule; (3) whether the rule is an adequate and independent State rule on which the State can rely to foreclose review of the federal claim; and (4) whether cause exists for the petitioner's failure to follow the rule, and that he was prejudiced by the alleged error. *Maupin*, 785 F.2d at 138.

Tennessee Rule of Appellate Procedure 36(a) provides that relief need not be granted "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a). Tennessee Rule of Appellate Procedure 3(e) provides that "no issue presented for [appellate] review shall be predicated upon . . . other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e). Petitioner failed to comply with these rules when he failed

to raise his Fifth Amendment challenge in the trial court, or in his motion for a new trial [Doc. 15-2 p. 6-8, 86-92, 110-12; Doc. 15-1 p. 161-64].

The Court finds that the waiver rule articulated in the Tennessee Rules of Appellate Procedure and relied upon by the TCCA constitutes a firmly-established and regularly-enforced independent rule. *See Hugueley v. Westbrooks*, No. 09-1181-JDB-EGB, 2017 WL 3325008, at *23 (W.D. Tenn. Aug. 3, 2017) (finding Tennessee Rule of Appellate Procedure 36(a) presents an "independent and adequate state procedural ground to bar habeas review"); *see also State v. Willis*, 496 S.W.3d 653, 755 (Tenn. 2016) (finding defendant waived challenge to prosecutorial comments where defendant failed to object at trial); *State v. Banks*, 271 S.W.3d 90, 137 (Tenn. 2008) (finding defendant waived challenge to erroneous prosecutorial argument where defendant failed to include issue in motion for new trial); *State v. Walker*, 910 S.W.2d 381, 386 (Tenn. 1995) (finding an issue waived under Tennessee Rule of Appellate Procedure 3(e) where defendant failed to object at trial and failed to raise the issue in motion for new trial). The Court therefore finds that the rejection of this claim by the State court rested on a State-law rule independent of the federal question and adequate to support the judgment, and that review of this claim is barred. *See Coleman*, 501 U.S. at 729–30; *Walker*, 562 U.S. at 315. Petitioner has not demonstrated cause and prejudice for the default, or that a fundamental miscarriage of justice would result from failure to consider this claim. Therefore, the Court will not review Petitioner's Fifth Amendment claim.

The Court otherwise notes that the State court did address Petitioner's allegation that the trial court erred in allowing amendment of the presentment after jury was sworn

and jeopardy had attached. *Moutry I*, 2013 WL 3105616, at *4–8. While the state-court analyzed this claim and found any error in permitting the amendment was harmless, its analysis centered on a violation of a State criminal procedural rule—not a federal constitutional violation.[1] *Id.* A state court's application of its own harmless error rule involves "a perceived error of state law" that fails to raise a federal constitutional issue. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Chapman v. California*, 386 U.S. 18, 21 (1967); *Lindsey*, 2013 WL 3834005, at *13. Here, the State court did not adjudicate a claim of "federal constitutional error[,] and habeas corpus review of the state court's harmless error ruling is impermissible under the AEDPA." *Lindsey*, 2013 WL 3834005, at *13.

Regardless, to the extent this allegation raises a claim of federal constitutional error, the Court notes that the Sixth Amendment guarantees a defendant the right "to be informed of the nature and cause of the accusation" against him. U.S. Const. Amend. VI. To pass constitutional muster, an indictment must "provide the defendant with 'fair notice of the charges against him to permit adequate preparation of his defense.'" *Haviland*, 467 F.3d at 535 (quoting *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984)). "Fair notice has been given when 'the offense [is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged.'" *Id.* (quoting *Koontz*, 731 F.2d at 535.

---

[1] The TCCA's analysis centered on application of Tennessee Rule of Criminal Procedure 7(b), which provides that an indictment may not be amended after jeopardy has attached without the consent of the defendant. *See* Tenn. R. Crim. P. 7(b).

In this case, the presentment was sufficient to put Petitioner on notice of the offenses with which he was charged. The presentment named each offense and referenced the applicable statutory provisions defining each offense, and the counts for carjacking and aggravated robbery further identified the victim and the property that was taken [Doc. 15-1 p. 7]. Additionally, the date of the offense was not an essential element of any of the crimes charged in the presentment. *See United States v. Scheuneman*, 712 F.3d 372, 379 (7th Cir. 2013) ("Where . . . a specific date does not form a crucial component of the offense, a variance in the dates charged in the indictment and those proved at trial will generally be harmless if the government prove[s] that the offense was committed on any day before the indictment and within the statute of limitations.") (citation omitted).

Moreover, the investigating officers testified that the offenses occurred on March 4, 2008, and the records supplied to Petitioner through discovery would have contained that date [*See* Doc. 15-2 p. 40–41, 53, 56, 80, 81]. For example, two exhibits admitted at trial without objection from Petitioner included the 911 dispatch log and cell phone records of the defendant and the victim, and both exhibits reflect the date of March 4, 2008 [Doc. 15-3 p. 21–22, 27–28]. Additionally, Petitioner called to report the Durango—the vehicle tied to the crime scene—as stolen in the early morning hours of March 5, 2008 [Doc. 15-2 p. 45, 65–66]. The Court finds, then, that Petitioner was on notice of the charges against him, and there was no prejudicial variance between the presentment and the proof at trial. Therefore, even under a federal constitutional analysis, the rejection of this claim was not unreasonable.

Finally, the Court finds Petitioner's argument that the State court's decision was contrary to *Martinez v. Illinois*, 572 U.S. 833 (2014), unavailing [Doc. 1 p. 5; Doc. 2 p. 25–26, 33–34]. On federal habeas review, "[s]tate court decisions are measured against [Supreme Court] precedents as of 'the time the state court renders its decision.'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)). The Supreme Court did not decide *Martinez* until 2014, nearly a year after the TCCA decided Petitioner's direct appeal, and therefore, it cannot form the basis of federal habeas relief. *Martinez*, 572 U.S. at 833; *Moutry I*, 2013 WL 3105616, at *1. Moreover, *Martinez* did not involve a challenge to the sufficiency of the indictment. Rather, it held that jeopardy attaches when a jury is sworn, and that the Double Jeopardy Clause barred a retrial when the trial court entered a directed verdict in favor of the defendant after jeopardy had attached. *Martinez*, 572 U.S. at 840–41, 842. Therefore, *Martinez* has no application to Petitioner's claim.

In sum, the Court finds this claim non-cognizable and procedurally defaulted. It otherwise finds, to the extent the claim is reviewable, that the State court's rejection of it was not unreasonable. Accordingly, Petitioner is not entitled to relief on this claim.

### B.      Ineffective Assistance of Counsel

Petitioner asserts five separate claims of ineffective assistance of counsel. These claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a habeas petitioner to satisfy a two-prong test to warrant federal habeas corpus relief: (1) he must demonstrate constitutionally deficient performance, and (2) he must demonstrate actual prejudice as a result of such ineffective assistance.

16

*Strickland*, 466 U.S. 668 (1984). Deficiency is established when a petitioner can demonstrate that counsel's performance falls below an objective standard of reasonableness as measured by professional norms, such that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687–88. A reviewing court's scrutiny is to be highly deferential of counsel's performance, with an effort to "eliminate the distorting effects of hindsight." *Id.* at 689. In fact, counsel is to be afforded a presumption that his actions were the product of "sound trial strategy" and undertaken with the exercise of reasonable professional judgment. *Id.*

Prejudice is established when the petitioner can demonstrate to a reasonable probability that the result of the proceedings would have been different but for the challenged conduct, thereby undermining confidence in the reliability of the outcome. *Id.* at 694. However, an error, even if professionally unreasonable, does not warrant setting aside the judgment if it had no effect on the judgment. *Id.* at 691.

On habeas review, the issue for the district court is not whether the *Strickland* standard is met, but rather, whether the State court's decision that *Strickland* was not met warrants relief under AEDPA standards. *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."). Accordingly, when a *Strickland* claim has been rejected on its merits by a State court, a petitioner "must demonstrate that it was necessarily unreasonable" for the State court to rule as it did in order to obtain federal habeas relief. *Pinholster*, 563 U.S. at 190.

### 1.     Failure to Investigate and Prepare for Trial

In his first claim for relief, Petitioner argues that trial counsel failed to conduct a proper investigation and prepare for trial [Doc. 1 p. 6; Doc. 2 p. 18–23].

A review of the record demonstrates that trial counsel requested discovery on February 18, 2010, over a year prior to Petitioner's trial, and that he obtained a private investigator to assist with the case [Doc. 15-11 p. 23, 7]. Trial counsel met with Petitioner at least "two to three" times in his office, along with "meetings at the courthouse when [Petitioner] was scheduled for trials" [*Id*. at 7]. Trial counsel reviewed and discussed discovery with Petitioner [*Id*. at 11, 16–17]. He also explained that he did not file any pretrial motions, challenge the testimony of Officer Shafer, or request forensic analysis on items found in Petitioner's car because he did not see any basis for these challenges and requests [*Id*. at 9–11].

Trial counsel testified that he and Petitioner had discussions about possible defense strategies [*Id*. at 12]. Counsel developed a defense that Petitioner could not have committed the offense because he was incarcerated on the date the indictment alleged the offense was committed [*Id*. at 8, 15]. Additionally, because Petitioner repeatedly told counsel that he did not know the victim and did not commit the offenses, trial counsel prepared a defense with these assertions [*Id*. at 8, 12]. Trial counsel explained that the alibi defense "was coupled with and strengthened by" the defense that the Petitioner did not know the victim and did not commit the offenses [*Id*. at 15].

Based on this proof, which the post-conviction court credited, it was not unreasonable for the State court to conclude that Petitioner had failed to establish that trial counsel's performance was deficient. *See, e.g.*, *Moutry II*, 2018 WL 2465147, at *5.

Moreover, Petitioner failed to present any evidence of the further investigation trial counsel should have conducted, nor did he show what would have resulted from further investigation. It is not unreasonable for a state court to conclude that a petitioner fails to establish prejudice based on trial counsel's alleged failure to investigate where the petitioner fails to present evidence of what the investigation would have yielded. *See Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004) (concluding that "pure speculation on whether the outcome of the trial or the penalty phase could have been any different" is "an insufficient basis for a successful claim of prejudice"); *Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) (holding that "a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material"). Accordingly, the rejection of this claim does not warrant relief under the AEDPA.

### 2. Plea Negotiations

Petitioner next argues that trial counsel was ineffective in failing to convey any plea offers to him [Doc. 1 p. 6; Doc. 2 p. 22–25]. At the post-conviction hearing, trial counsel could not recall specifically whether a plea offer was made in this case [Doc. 15-11 p. 14]. However, trial counsel testified that the prosecutor "quite often" made plea offers, and he specifically stated that it was "not the case" that Petitioner would have been uninformed of

plea negotiations and uninformed of any plea offers [Doc. 15-11 p. 12, 14]. This testimony was credited by the post-conviction court, and the rejection of this claim by the TCCA was not unreasonable. *See Moutry II*, 2018 WL 2465147, at *6.

Moreover, to establish prejudice based on counsel's failure to convey a plea offer, Petitioner must show a reasonable probability that both he and the trial court would have accepted the plea offer absent counsel's deficient performance. *See Missouri v. Frye*, 566 U.S. 134, 147 (2012). Petitioner is also required to show "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id*.

During post-conviction proceedings, Petitioner did not present any evidence of a specific plea bargain that the State offered, nor did he present any evidence that he would have accepted an offer to plead guilty. Additionally, his continued assertion throughout trial preparation and in the post-conviction hearing that he did not commit the crimes casts doubt on any claim that he would have accepted a plea bargain. *See Comrie v. United States*, 455 F. App'x 637, 640 (6th Cir. 2012). Moreover, Petitioner has not presented any evidence that any plea offer from the State would have resulted in a more favorable sentence. Accordingly, Petitioner has not demonstrated that the rejection of this claim warrants relief under the AEDPA.

### 3. Failure to Prepare Defense and Request Continuance

Petitioner argues that trial counsel rendered ineffective assistance in failing to prepare a viable defense and request a continuance after the trial court permitted the State to amend the indictment [Doc. 1 p. 6; Doc. 2 p. 25–28]. The TCCA rejected this claim,

finding that Petitioner failed to demonstrate that trial counsel's performance was deficient. *Moutry II*, 2018 WL 2465147, at *6.

As the Court has noted, the record demonstrates that trial counsel received discovery, and that he was aware that the discovery alleged that the offense occurred on a date different than that listed in the indictment [Doc. 15-11 p. 27–29]. Trial counsel planned to present an alibi defense centered around the assertion that Petitioner was incarcerated on the date of the offense in the indictment, but he also planned to present a defense that Petitioner did not know the victim and was not at the scene of the crime, which was consistent with Petitioner's repeated assertions of his innocence [*Id*. at 8, 12]. Trial counsel did not learn until trial that Petitioner and the victim had a prior relationship that was "somewhat of a boyfriend/girlfriend type relationship" [*Id*. at 12, 21].

Additionally, contrary to Petitioner's assertion [Doc. 2 p. 28], the State court addressed his claim that trial counsel was ineffective by failing to request a continuance. The TCCA specifically stated that "[t]he Petitioner maintains that trial counsel was ineffective in failing to develop a viable defense or requesting a continuance once the presentment was amended." *Moutry II*, 2018 WL 2465147, at *6. The court determined that trial counsel was not deficient in failing to request a continuance, because he was still able to advance Petitioner's alibi defense. *Id*. The Court finds that the record supports that determination. Trial counsel cross-examined the victim about her identification of Petitioner in a photographic lineup on March 14, 2008 [Doc. 15-2 p. 24–26; *see also* Doc. 15-3 p. 25]. He elicited testimony from her that she "believe[d]" she made the identification "the day after" the offenses were committed [Doc. 15-2 p. 25]. He also

elicited testimony from Officer Shaffer that Petitioner was in jail from March 10, 2008, to March 17, 2008 [*Id*. at 79].

Additionally, Petitioner failed to identify a viable alternative theory of defense that trial counsel should have discovered. It was, therefore, not unreasonable for the State court to conclude that without presenting such evidence, Petitioner could not show that trial counsel was deficient. *See Hutchison*, 303 F.3d at 748 (holding that "a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material"). Accordingly, the Court finds that Petitioner has not demonstrated that the rejection of this claim warrants relief under the AEDPA.

### 4. Right to Testify

Petitioner next contends that trial counsel failed to advise him of the right to testify in his defense [Doc. 1 p. 6; Doc. 2 p. 29–32]. The TCCA rejected this claim, finding that Petitioner's allegations were not supported by the record, and that trial counsel's advice to Petitioner was not deficient. *Moutry II*, 2018 WL 2465147, at *5, 6.

At the post-conviction hearing, trial counsel testified that he discussed with Petitioner whether Petitioner should testify at trial [Doc. 15-11 p. 12–13]. Trial counsel stated he discussed Petitioner's prior criminal history with him and advised Petitioner that, in light of that criminal history, Petitioner's testimony would have "opened up some bad things in front of a jury" [*Id*. at 13]. Trial counsel stated that he therefore advised Petitioner not to testify [*Id*.].

22

Additionally, Petitioner's trial testimony shows that he was aware of his right to testify and voluntarily elected not to do so. In a colloquy with the trial court, Petitioner repeatedly acknowledged that he understood that he had a right to testify [Doc. 15-2 p. 92–94]. Petitioner then affirmatively waived that right stating, "I ain't going to testify" [*Id*. at 94].

"Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). This Court "is entitled to rely on those statements and the testimony of trial counsel." *Cummins v. Phillips*, No. 1:16-cv-23, 2017 WL 6554889, at *18 (M.D. Tenn. Dec. 22, 2017). Here, the testimony of both trial counsel and Petitioner establish that Petitioner was aware of his right to testify. Therefore, Petitioner has failed to demonstrate that the decision rejecting this claim warrants relief under the AEDPA.

### 5. Sentencing

In his final claim for relief, Petitioner argues that trial counsel was ineffective for failing to file a sentencing memorandum or present any evidence during the sentencing hearing [Doc. 1 p. 6–7; Doc. 2 p. 32–34]. However, the TCCA observed that Petitioner failed to identify any applicable mitigating factors and did not present any evidence of any mitigating factors. *Moutry II*, 2018 WL 2465147, at *6. Therefore, the court concluded that Petitioner had failed to show deficient performance by counsel or resulting prejudice. *Id*.

Again, as Petitioner did not present any evidence in support of his claim, the rejection of it was not unreasonable. *See Hutchison*, 303 F.3d at 748 (holding that "a

petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material"). Accordingly, Petitioner has failed to demonstrate that the rejection of this claim warrants relief under the AEDPA.

In sum, Petitioner has failed to demonstrate that the decision rejecting each of his ineffective assistance of counsel claims is contrary to, or involves an unreasonable application of, *Strickland* and its progeny, or that the decision is based on an unreasonable determination of facts in light of the evidence presented.

## IV.    CERTIFICATE OF APPEALABILITY

The Court has not found any grounds warranting federal habeas relief. A petitioner must obtain a certificate of appealability ("COA") before he may appeal this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

**V.      CONCLUSION**

For the reasons set forth herein, the instant petition for a writ of habeas corpus will be **DENIED**, and this action will be **DISMISSED WITH PREJUDICE**.  A certificate of appealability from this decision will be **DENIED**.

Further, the Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous.  Fed. R. App. P. 24.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE